seems to me a fair interpretation of the statute must give to a claimant compensation as for the loss of a distal phalange under a finding by the Commission that an injury thereto did cause the substantial loss of the use of that phalange. But there is no such finding in the case at bar, and we are called upon to decide whether the loss of a very small part of a phalange as matter of law constitutes the loss of that phalange, where there is other provision in the statute for compensation in cases not specifically provided for.

I vote for a reversal of the determination and the remission of the case to the Commission, for their determination of the question of fact as to whether in the case at bar the loss of a portion of the distal phalange has caused the substantial loss of the use of the whole thereof.

JOHN M. KELLOGG, J. (dissenting). The statute fixes the compensation for particular losses, and then provides that in all other cases of this class of disability the compensation shall be 66⅔ per centum of the difference between the average weekly wage and the wage-earning capacity thereafter in the same employment, or otherwise, payable during the continuance of such partial disability, etc. The question here, therefore, is not whether there is a compensation for the loss of one-third of the first phalange of the finger, but relates to the particular compensation for the loss. If the first phalange is lost, the compensation is fixed; if a lesser injury occurs to the finger, the compensation depends upon the loss of earning power. The Legislature has fixed the compensation for the first phalange—not for any part of the first phalange. This means a substantial loss of that phalange. Here the loss is one-third. If the loss of one-third of the phalange comes within the schedule, perhaps the loss of one-sixth or one-tenth would also be within it. If that was the intention, the Legislature could easily have said "for the loss of the first phalange, or any part thereof," or "any substantial part thereof."

I therefore think the claimant is entitled to compensation, not for the loss of a phalange, as fixed by the schedule, but under the provision relating to "other cases," which entitles him to be compensated according to the loss of earning power.

---

GAS ENGINE & POWER CO. et al. v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. December 31, 1914.)

1. MUNICIPAL CORPORATIONS (§ 395*)—STREETS—CHANGE OF GRADE—INTEREST ON AWARD.

Since, under Greater New York Charter (Laws 1901, c. 466) § 953, an action for an award by assessors for damages from the change of a street grade cannot be maintained until after demand is made, no interest on such award can be recovered for time prior to the demand.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 946–948; Dec. Dig. § 395.*]

2. MUNICIPAL CORPORATIONS (§ 402*)—STREETS—CHANGE OF GRADE—AWARD —DEFINITENESS.

An award of damages for change of a street grade was not invalid for indefiniteness, where it stated that it was made for damages from changes

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in the grade "or" the closing or partial closing of the street; it not being necessary that the different elements of damage be stated separately and in detail.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 969–981; Dec. Dig. § 402.*]

3. MUNICIPAL CORPORATIONS (§ 385*)—STREETS—"CHANGE OF GRADE."

To effect a "change of grade," it is essential that there shall have been a previously established grade and that a new grade be physically made, but not that the street shall have been previously graded to its legally established grade.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 925–928; Dec. Dig. § 385.*

For other definitions, see Words and Phrases, First and Second Series, Change.]

4. MUNICIPAL CORPORATIONS (§ 385*)—STREETS—CHANGE OF GRADE—RIGHT TO COMPENSATION—"GRADED STREET IN EXISTENCE."

While a property owner, to be entitled to an award for damages for a change of grade, must show that there was a "graded street in existence" before a new grade was established, this means a street with an established grade, and not necessarily a street that has been physically constructed at the established grade.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 925–928; Dec. Dig. § 385.*]

5. MUNICIPAL CORPORATIONS (§ 402*)—STREETS—CHANGE OF GRADE—RIGHT TO COMPENSATION—ACCRUAL.

The right to compensation for damages from change of a street grade, necessitated by the improvements required for the elimination of a grade crossing, had accrued at the time of an award made on modified plans, though the work was not then complete, where the railroad company's part of the work had been completed, and the street had already been obstructed, and the city's part was in the course of prosecution, especially where no claim was made before the assessors that the proceeding was prematurely instituted, and no question between successive owners was involved.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 969–981; Dec. Dig. § 402.*]

Appeal from Judgment on Report of Referee.

Action by the Gas Engine & Power Company and another against the City of New York. From judgment for plaintiffs, defendant appeals. Affirmed, on opinion of referee.

The opinion of Referee Edgar M. Cullen is as follows:

The plaintiff about the year 1888 was the owner of a tract of land lying on the north side of 177th street, between the right of way of the New York Central & Hudson River Railroad Company and the Harlem river, extending northward some 1,200 feet. 177th street appeared on the maps of that territory, first as Dashwood place, and later as Dock street. On December 17, 1895, the commissioner of street improvements of the Twenty-Third and Twenty-Fourth wards of the city of New York filed in the office of the register of the county of that name a map made by the board of street openings and improvements of said city, showing the location of lines, grades, streets, roads, avenues, and public sewers in a section of said wards. On that map appeared 177th street, and also the intended grade thereof, which was from one to two feet above the surface of the land. As early as 35 years ago there had been a traveled road from the railroad over 177th street as far as the land was filled in, thence south to a steamboat wharf, which was constantly used and traveled by the public as a means of access from the wharf to the back country. About 1888 or 1889 the city placed on the

line of said street a fire hydrant and later a public lamp. In 1902 the street was opened to the river through proceedings by which the defendant acquired title thereto. The street was not regulated or paved, but it continued to be used by the public at its old grade. Thereafter, in 1903 and 1904, the Legislature determined that the grade crossings of several streets across the railroad, including 177th street, should be eliminated (chapter 423, Laws 1903, amended chapter 634, Laws 1905), and for that purpose prescribed that the railroad company should at its expense construct the necessary bridges and abutments to carry the streets over the tracks, while the city should, at its expense, make the necessary changes in the streets and avenues, and acquire and construct all approaches to bridges, and pay all damages to land and buildings fronting on that portion of the street or avenue closed, or whose grade should be changed, which damages should be ascertained and awarded by the board of assessors of the city. The railroad company was required to submit plans and profiles of the improvement to the board of estimate and apportionment of the city of New York for its approval, one copy, when approved, to be filed with the board of estimate and apportionment of the city of New York.

In pursuance of this act in 1905 the railroad company and the board of estimate adopted plans for the improvement. The effect of this was to raise the grade of the street where it crossed the railroad. In pursuance of this act the railroad company submitted plans for the improvement (in which subsequently some slight and unsubstantial changes were made), which were approved by the chief engineer of the city and the president of the borough of the Bronx, but the approval of the board of estimate was not obtained until later. Contracts for doing the work were awarded by the city and the railroad company, by the former in July, 1905, and by the latter in March, 1905. By this plan the street was carried over the railroad at an elevation of some 24 feet. From that point westerly the street was carried by a viaduct falling at the rate of 4½ feet in 100. For some 70 feet this viaduct consisted of open bridgework. Beyond that, to the west, it consisted of solid filling, held up by retaining walls on each side. Towards the westerly end the viaduct turned to the south and fell till it reached the old grade. On May 25, 1906, the plaintiff presented its petition to the board of assessors, asking for an award of damages for the closing and changing of the grade of the street. On November 16th of that year the said board made its certificate, whereby it awarded to the plaintiff the sum of $310,000, with interest thereon from the 1st of September, 1905. The time to review such award was extended from time to time, but no proceedings have ever been taken to review it.

[1] An action to recover the amount of an award by the assessors for damages caused by change of grade of a street cannot be maintained until after demand made (Charter, § 953), and the form in which the assessors saw fit to make their award cannot relieve the plaintiff from the requirements of the charter. Hence it can recover no interest prior to March 23, 1912, the date of demand.

[2] The first objection of the defendant to the validity of the award is that it is indefinite, because it states that the amount specified is awarded for damages caused "by reason of the erection of the approach to and over the tracks * * * the changes in the grade of 177th street, or the closing or partial closing of said 177th street." It is claimed that it should have stated for which of said causes of injury the award was made, and that, as the disjunctive is used, the award is made for one only of such injuries, not for all, and that the defendant is open to still another claim. I think this claim is far too technical. "Or" can easily be read as "and," if that is necessary to support the award. But in reality the purport of the certificate is plain. The award is intended to include all damages caused by the improvement to the street, apart from nomenclature, whether it be called a closing or a change of grade, each of which, technically, it probably was in part. It was not necessary the certificate should separate and specify in detail what were the different elements of damage. People ex rel. Heiser v. Gilon, 76 Hun, 346, 27 N. Y. Supp. 704, affirmed on opinion below 148 N. Y. 763, 43 N. E. 989.

[3, 4] The next objection is that the improvement effected no change of grade in 177th street, because the street had never previously been graded. To effect a change of grade two things are necessary: The first, that there shall have been a previously established grade; second, that a new grade should be physically made. The fact that the street may not have been graded to its legally established grade does not prevent a new grade from being a change of grade. While the award in suit was not made under any provision of the charter, still those provisions show what a change of grade is. Under section 950 the liability is for "changing a grade once established by lawful authority," and lawful authority is where the grade was "originally established by the action of the public authorities," or the street has been used and worked by the public authorities for 20 years.

Reliance is placed by the learned counsel for the respondent on the case of People ex rel. Astor v. Dickey, 157 App. Div. 794, 142 N. Y. Supp. 776. In that case the learned judge says: "It is manifest that, in order to be entitled to an award for damages for a change of grade, a property owner must show that there was a graded street in existence before the new grade was established." I do not understand that this is an intimation that a street must be graded to its first or originally established grade to entitle the owner to compensation for a change of the original grade. A reference to the record shows there was no such question in the case. The point on which the case was decided was that there was no such street, but merely a paper plat of a street, before the actual improvement for which the relator sued to recover compensation. The expression "a graded street in existence" means a street with an established grade, not necessarily a street that has been physically constructed at the established grade. If that were the rule, no person who improved his property abutting on an opened street, on the faith of a grade lawfully established by the authorities, would be entitled to compensation if the street had not been once regulated and constructed at such established grade. On the contrary, many, if not most, cases where recovery has been had, are where the first physical grading of the street has been upon a new and changed grade.

[5] The final objection of the defendant is that the award was void, because at the time it was made the improvements had not been completed. As already said, the contracts of both parties, the city and the company, at whose expense the improvements were to be made, had already been let for the work. The company's share of the work, indeed, had been completed. The bridge and its abutments had been built and a new station constructed at the new grade of the street. To gain access thereto temporary wooden approaches on 177th street had been constructed by the railroad company, for which the city afterwards paid, as it was part of its share of the work. While the first plan was modified, it was in trivial details, and, as a matter of fact, it was the modified plan which was before the board of assessors, and upon which the award was made.

The defendant contends that no award could be made—in fact, that no application could be entertained—until after the completion of the work, and to support the claim, cited the case of People ex rel. Janes v. Dickey, 206 N. Y. 581, 100 N. E. 462. What was decided in that case was that the damages caused by the change of grade of a street accrued when the grade was actually changed and were payable to who might be the owner at that time. But the case does not hold that the proceeding cannot be initiated before the completion of the improvement. The decision proceeds on the theory that until the change is made there is room for another change, and the newly declared grade may never be actually made. Before the completion of an entire improvement a particular abutter may suffer all his damage. It may be that the statute will not commence to run against his application for compensation till after the completion of the improvement, but it does not at all follow that he is bound to await such completion before he seeks relief. True, the city may change the new grade before the work is completed; but that would not relieve it for damage already done to him.

In this case the improvement was an entirety; part of it, the company's part, had already been done. The street had been already obstructed to a certain extent, so it may be truly said that the improvement was in the course

of prosecution. It is proved by the engineer that the award was made on the modified plans. The city made no claim before the board of assessors that the proceeding was instituted prematurely, and there is no question here between successive owners. It seems to me that under these circumstances it would be giving effect to mere technicalities to hold the award invalid. But even these technicalities, I think, are not well supported by the authorities. The true rule, it seems to me, is that stated by Judge Clark in Johnson v. Pettit, 120 App. Div. 774, 105 N. Y. Supp. 730, as to the time when the right to compensation accrues: "If that moment was not when the law was passed providing for the erection of the viaduct, it must have been when it became certain that the work would be done." The present case falls far within that rule.

Finally, it is suggested that the award is extravagant. It is sufficient answer to this to say that the defendant has made no attempt to review it, though the time for such review was often extended. There is no suggestion of fraud or collusion in making the award. Its amount is $310,000. One of the defendant's own witnesses fixed the damage done to the plaintiff's property at $259,000. It seems to me that in view of this evidence it is idle to claim that the award is excessive or extravagant.

Judgment should be rendered to plaintiff for the amount of the award, with interest from the date of the demand; each party to submit findings within 20 days.

C. J. Nehrbas, of New York City, for appellant.
J. F. Brennan, of Yonkers, for respondent.

PER CURIAM.   Judgment affirmed, with costs, on opinion of referee.   Order filed.

---

(165 App. Div. 626)

PEOPLE v. HUDSON VALLEY CONST. CO. et al.   (No. 323–24½.)

(Supreme Court, Appellate Division, Third Department.   January 6, 1915.)

1. CRIMINAL LAW (§ 112*)—PROSECUTION—VENUE.
    Where a corporation, constructing a state prison in W. county under a contract whereby it was to be paid the net cost thereof and a commission, presented in that county to the deputy state architect for his certification false statements as to the cost of labor and materials, and upon such false statements prepared and presented in A. county a false voucher, by means of which it obtained money from the state in A. county, the offense was committed partly in each county, and the corporation can be prosecuted in W. county.
    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 220–226, 230; Dec. Dig. § 112.*]

2. WITNESSES (§ 304*)—PRIVILEGE—SELF-INCRIMINATION—CORPORATION.
    Const. art. 1, § 6, providing that the defendant in a criminal case shall not be compelled to be a witness against himself, and Code Cr. Proc. § 393, providing that the failure of accused to testify shall create no presumption against him, create privileges personal to the accused, and do not apply to the testimony or failure to testify of the officers of a corporation which is accused of a crime.
    [Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1051, 1052; Dec. Dig. § 304.*]

3. FALSE PRETENSES (§ 49*)—EVIDENCE—SUFFICIENCY.
    In the prosecution of a corporation for obtaining money from the state by a false voucher, evidence *held* sufficient, in the absence of any testimony on behalf of defendant, to sustain a conviction.
    [Ed. Note.—For other cases, see False Pretenses, Cent. Dig. § 62; Dec. Dig. § 49.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes